# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| TERESA GONZALEZ | § | PLAINTIFF |
| | § | |
| | § | |
| v. | § | Civil No. 1:14CV62-HSO-RHW |
| | § | |
| | § | |
| UNITED STATES OF AMERICA and | § | |
| JOHN DOES A-Z | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S [52] MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion to Dismiss or for Summary Judgment [52] filed by Defendant United States of America on September 8, 2015. This Motion is fully briefed. After consideration of the Motion, the pleadings, the record in this case, and relevant legal authorities, and for the reasons discussed below, the Court finds that this Motion should be granted and that Plaintiff's claims should be dismissed.

## I.  BACKGROUND

A.  Factual Background

On or about July 28, 2012, Plaintiff Teresa Gonzalez ("Plaintiff") and her boyfriend Robert Reville ("Mr. Reville") were bicycling in the De Soto National Forest in South Mississippi on bicycle trails known as the Bethel Bicycle Trails. Compl. [1] at 2-3; Dep. of Teresa Gonzalez [52-2] at 28-30. Specifically, Plaintiff and

Mr. Reville were traversing what is known as the Couch Loop Trail.  Dep. of Teresa Gonzalez [52-2] at 63, 145, 163.

Along this trail, Plaintiff and Mr. Reville encountered a "teeter-totter" and a ramp.  Dep. of Teresa Gonzalez [59-2] at 157; Dep. of Robert Mark Reville, Jr. [59-6] at 11.  Plaintiff and Mr. Reville reached a point on the Couch Loop Trail where they could see the ramp to their left on what Plaintiff characterized as an "alternate route."  Dep. of Teresa Gonzalez [59-2] at 62-63.  According to Plaintiff, once a person went over the ramp, he or she would "eventually end up back on the main trail."  *Id.*  Plaintiff and Mr. Reville elected to take the alternate route with the ramp instead of the main trail.  *Id.*

Mr. Reville described the ramp as a "jump that was across the log."  Dep. of Robert Mark Reville, Jr. [59-6] at 12.  Mr. Reville jumped the ramp on his bicycle without incident.  Dep. of Teresa Gonzalez [52-2] at 42.  Even though Plaintiff had never jumped off a bicycle ramp, she attempted to jump the ramp as well.  *Id.* at 42-43.  Plaintiff asked Mr. Reville to film her attempt.  *Id.*; Dep. of Robert Mark Reville, Jr. [59-6] at 14.  Defendant United States of America ("Defendant" or the "Government") has conventionally filed a copy of the video taken by Mr. Reville as Exhibit "1" to its Motion [52].

The video shows Plaintiff riding up the ramp on her bicycle and then tumbling forward off the end of the ramp.  *See* Video [52-1].  Plaintiff appears to land directly on her head.  *See id.*  According to Plaintiff, she was not traveling at a fast enough speed, and once she was on the ramp, she "realized the dropoff was

higher than [she] thought." Dep. of Teresa Gonzalez [52-2] at 43-44.  As a result of the fall, Plaintiff "sustained painful and permanent personal injuries to her head, neck, and body as a whole." Compl. [1] at 3.  Plaintiff admits she could have gone around the ramp instead of going over it.  Dep. of Teresa Gonzalez [52-2] at 145.

Plaintiff believed at the time that the United States Forest Service ("USFS") had constructed the ramp as part of the bicycle trail.  Dep. of Teresa Gonzalez [52-2] at 49.  However, the undisputed evidence reflects that the USFS did not build the ramp and was not aware of its existence prior to Plaintiff's incident.  *See, e.g.,* Dep. of Ronald A. Smith [52-3] at 28; Dep. of Charles D. Grice, Sr. [52-9] at 49.  Instead, certain individuals associated with the Gulf Coast Bicycle Club had erected the ramp without the knowledge or authorization of the USFS.  *See, e.g.,* Memoranda of Interviews [52-10] at 4-5; Statement of Probable Cause [52-10] at 11.[1]

The Couch Loop Trail was closed on the date of Plaintiff's accident.  The closure was due to a USFS bridge that had been built farther down the trail being washed out, and subsequently, an unauthorized bridge that had been built in the same location had also been washed out.  *See, e.g.,*  Dep. of Charles D. Grice, Sr. [52-9] at 52-54; Dep. of Charles D. Grice, Sr. [59-7] at 112-13.  The USFS had posted a sign on a bulletin board at the trailhead in April or May 2012 advising that the Couch Loop Trail was closed.  Dep. of Charles D. Grice, Sr. [52-9] at 52, 54-56; Dep.

---

[1]  The Gulf Coast Bicycle Club and the USFS maintained the trails for bicycling and hiking.  Dep. of Charles D. Grice, Sr. [59-7] at 43.  Gulf Coast Bicycle Club members were permitted to perform some maintenance along the trail on a volunteer basis when authorized to do so by De Soto District Ranger Ron Smith.  *Id.* at 43-44.

of Charles D. Grice, Sr. [59-7] at 43, 66, 113.  The sign was the same size as an eight-and-a-half-by-eleven inch standard sheet of paper.  Dep. of Charles D. Grice, Sr. [59-7] at 79.  The USFS had also marked the location of the original bridge with wood boards, signs, and ribbons.  *Id.* at 55-56.  However, Plaintiff encountered the ramp before she would have arrived at the washed-out bridge.  *Id.* at 56.

Ron Smith ("Ranger Smith") was the De Soto District Ranger at the time of Plaintiff's accident.  Ranger Smith testified that he did not personally visit the Bethel Bicycle Trails in 2011 and 2012.  Dep. of Ronald A. Smith [52-3] at 7.  Two USFS technicians, Charles Grice ("Mr. Grice") and Anthony Bond ("Mr. Bond"), oversaw the maintenance, upkeep, and inspection of the trails in 2012.  *Id.*  Mr. Grice was a full-time employee and Mr. Bond was a part-time technician.  *Id.*  No one had reported the unauthorized ramp to Ranger Smith prior to Plaintiff's incident on July 28, 2012, and Ranger Smith did not know how long the ramp had been present on the trail before the accident.  *Id.* at 28-29.

Mr. Grice testified that his job duties included inspecting and maintaining the Bethel Bicycle Trails.  Dep. of Charles D. Grice, Sr. [52-9] at 6.  As part of those duties, Mr. Grice would "go out and look for hazard trees or anything that's tore up or needs repair work done."  *Id.*  According to Mr. Grice, if he discovered an unauthorized structure, "I go tell my ranger what I found."  *Id.*  Mr. Grice relayed that

> probably most of the time when I do an inspection it's from like people
> calling me saying, hey, we got a problem at this area on whichever loop,
> then I go out there and look.  You know, [Mr. Bond and I] bush hog the

-4-

> trail pretty much every year.  We take our bush hog and tractors and
> bush hog it and clear it out and clean it up.

*Id.* at 22.  Mr. Grice could not recall the last time he had traveled or inspected the

Couch Loop Trail prior to Plaintiff's accident.  *Id.* at 27-29.  Mr. Grice first observed

the unauthorized ramp and teeter-totter after Plaintiff's accident.  *Id.* at 49-51.  Mr.

Grice described the alternate part of the bicycle trail which led directly to the ramp

as "not our trail."  Dep. of Charles D. Grice, Sr. [59-7] at 122.  "It's not our

maintained trail that we use.  This is a trail that bike people or someone has made

theirself [sic]."  *Id.*  Mr. Grice did not know how long bicycle riders had been using

the alternate route that led to the ramp.  *Id.*

B.      Procedural History

Plaintiff filed a Complaint [1] in this Court on February 21, 2014, naming the

Government as the sole Defendant.  Compl. [1] at 1.  The Complaint advances

negligence premises liability claims against the Government for failing to use

ordinary care to keep its premises in a reasonably safe condition, failing to warn

Plaintiff of the condition of the trails and the danger of the ramp, failing to exercise

reasonable care by performing reasonable inspections or other affirmative acts, and

failing to use reasonable care to provide a recreational area and bike trails which

were free from dangerous conditions.  *Id.* at 5.

The Government has filed a Motion to Dismiss or for Summary Judgment.

The Government asserts that this Court lacks subject matter jurisdiction over the

Plaintiff's claims due to the discretionary function exception to the waiver of

sovereign immunity contained in the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"), such that dismissal is required under Federal Rule of Civil Procedure 12(b)(1). Def.'s Mem. in Supp. of Mot. [53] at 8-16. The Government alternatively argues that Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 56(a) based upon Mississippi premises liability law. *Id.* at 16-19.

Because the Court finds that it lacks subject matter jurisdiction and must dismiss this case pursuant to Rule 12(b)(1), the Court need not reach the Government's alternative request for summary judgment under Rule 56.

## II. <u>DISCUSSION</u>

### A.   <u>Rule 12(b)(1) Standard</u>

"A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). "Under Rule 12(b)(l), a claim is 'properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Id.* at 287. In this case, the Court resolves the Government's Motion based upon the Complaint and the undisputed facts in the record.

B.   <u>Sovereign Immunity and the Discretionary Function Exception</u>

"A plaintiff may only sue the United States if a federal statute explicitly provides for a waiver of sovereign immunity.  The United States must consent to be sued, and that consent is a prerequisite to federal jurisdiction."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d at 287 (citation omitted).  "Waivers of sovereign immunity should be narrowly construed in favor of the United States."  *Id.*

"The FTCA is recognized as providing a waiver of sovereign immunity and provides the sole basis of recovery for tort claims against the United States."  *Id.* However, "Congress has carved out several exceptions to the FTCA's broad waiver of immunity."  *Davila v. United States*, 713 F.3d 248, 263 (5th Cir. 2013).  "One of these exceptions protects the government from suits that are 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'"  *Id.* (quoting 28 U.S.C. § 2680(a)). "The discretionary-function exception 'covers . . . acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'"  *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).

"Whether the discretionary exception applies involves a two-part inquiry."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La. Plaintiffs)*, 713 F.3d 807, 810 (5th Cir. 2013).  The first question is whether the act "involve[s] an element of judgment or choice."  *Id.* (quotation omitted).  "The first part is met if a statute,

regulation, or policy leaves it to a federal agency or employee to determine when and how to take action." *Id.* (quotation omitted). "In other words, the Government needs to establish that there was 'room for choice' in making the allegedly negligent decision." *Davila*, 713 F.3d at 263 (quoting *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007)).

"Second, the judgment must be 'of the kind that the exception was designed to shield.'" *Id.* (quoting *Ashford*, 511 F.3d at 505); *see also Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "The basis for the discretionary function exception was Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at 536-37. "The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy." *Id.* at 537. "The second part of the inquiry asks not whether the decision maker in fact engaged in a policy analysis when reaching his decision but instead whether his decision was susceptible to policy analysis." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La. Plaintiffs)*, 713 F.3d at 810 (quotation omitted). "Only if both prongs of the test are met will the discretionary-function exception apply." *Davila*, 713 F.3d at 263.

C.    The Court's Subject Matter Jurisdiction over Plaintiff's Claims against the Government

The Complaint alleges that USFS personnel were negligent in failing to exercise reasonable care in performing inspections and properly maintaining the

-8-

trails, and in failing to warn Plaintiff of the condition of the trails and the danger of the ramp by not placing proper signage informing her that the Couch Loop Trail was closed.  Compl. [1] at 5.

In support of her arguments, Plaintiff has supplied Chapter 2350 from the Forest Service Manual (the "Manual" or "FSM"), effective November 4, 2009, FSM [59-18] at 1-102,[2] and Chapter 2309.18 of the Forest Service Handbook (the "Handbook" or "FSH") regarding Trails Management, FSH [59-15] at 1.[3]  The Government and Plaintiff have also submitted excerpts from the Engineering Manual Sign and Poster Guidelines for the Forest Service (the "EM Guidelines"). EM Guidelines [52-13] at 1-10; EM Guidelines [59-14] at 1-23.[4]

    1.    <u>Failure to Perform Inspections and Maintain the Trails</u>

Plaintiff maintains that USFS personnel were required to conduct safety inspections and ensure that hazards did not exist along its trails.   Resp. [59] at 24, 33-35.  Had the USFS properly inspected the Couch Loop Trail, its personnel would have discovered the unauthorized ramp.  *Id.* at 34.  Plaintiff cites FSH 2309.18 paragraphs 15 and 18, and FSM 2300, paragraphs 2350.03, 2353.02, 2353.15, and

---

[2]  The Government has submitted 13 pages of excerpts with its Motion.  Manual [52-11] at 1-13.

[3]  The Government has provided an excerpt from the Handbook [52-12].

[4]  The Government maintains that many of the chapters of the EM Guidelines relied upon by Plaintiff "have no applicability to trails and visitors to federal lands."  Rebuttal [62] at 2 n.1.  The Court agrees.  For example, Chapter 3 of the Guidelines involves "Traffic Control Devices," which have no relevance to this case.

2353.23, to support this position.  *Id.* at 24 (citing FSH [59-15] at 14-16, 21-22; FSM [59-18] at 7, 11, 22, 24).[5]

Having conducted a thorough review of the foregoing provisions and other relevant portions of the Handbook and Manual, the Court is not persuaded that these resources mandate when or how USFS personnel are to perform inspections of bicycle trails.  The Handbook provides that the USFS should "consider" certain factors when establishing priorities and management requirements for trail projects.  FSH [59-15] at 21-22.  While the Handbook does state that determining that "[h]azards do not exist on or along the trail" is a Critical National Quality Standard on the National Quality Standards for Trails, the Handbook does not direct precisely how USFS personnel should accomplish the goal of having hazard-free trails.  *See id.* at 16.  Nor does any provision of the Manual impose any mandatory requirements in this regard.  *See generally* FSM [59-18] at 1-102.

In other words, these policies or procedures speak in terms of allowing an element of choice by USFS personnel in determining when or how to inspect a trail, and leave it to USFS personnel to determine when or how to conduct inspections and maintenance.  Because there was "room for choice" by USFS personnel in this respect, the first prong of the discretionary function exception is satisfied as to any

---

[5]  The Court observes that the ramp in question was not on a USFS-maintained trail.  Plaintiff admittedly chose an "alternate route" when she saw the ramp, Dep. of Teresa Gonzalez [59-2] at 62-63, and Mr. Grice testified that the portion of the bicycle trail with the ramp was not created or maintained by the USFS, Dep. of Charles D. Grice, Sr. [59-7] at 122.  One policy stated in the Manual is "[d]o not maintain unauthorized trails." FSM [59-18] at 7.

alleged failure to inspect the trail and discover the dangerous condition.  *Davila*,
713 F.3d at 263.

Decisions surrounding when or how to inspect the Couch Loop Trail are also
susceptible to policy analysis, satisfying the second prong of the discretionary
function analysis.  *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La.
Plaintiffs)*, 713 F.3d at 810.  The Manual directs that the USFS should "[e]mphasize
long-term cost effectiveness and need when developing or rehabilitating trails," and
"[p]rovide a trail system that is environmentally, socially, and financially
sustainable."  FSM [52-11] at 11.  Trial Operation and Maintenance Considerations
"are a starting point and likely will need to be adapted to reflect local financial
capability and other circumstances."  FSH [52-12] at 1.

In short, USFS personnel are instructed to consider a number of policy
factors in maintaining trails, a classic example of what the second prong of the
discretionary function exception analysis requires.  Plaintiff's claims for failure to
perform inspections on the trails and to discover the unauthorized ramp are
therefore precluded by sovereign immunity and will be dismissed.  To conclude
otherwise would amount to judicial second-guessing of administrative decisions
grounded in social, economic, and political policy, an outcome the discretionary
function exception was designed to prevent.  *See Berkovitz*, 486 U.S. at 536-37.

2.   <u>Failure to Warn of Danger and to Place Proper Signage</u>

Plaintiff argues that the USFS "has standard signs to warn of known
hazards" which were not utilized.  Pl.'s Resp. [59] at 10 (citing EM Guidelines, EM

7100-15).  However, the record reflects that the USFS was unaware of the ramp which caused Plaintiff's injuries until after this incident, such that the ramp did not constitute a "known hazard."  Plaintiff has cited no authority for the proposition that the USFS is required to warn of unknown hazards which it did not create, and the Court has found none.

The record also reflects that the reason the Couch Loop Trail was closed was unrelated to the bicycle ramp.  The potential hazard which necessitated the trail closure was the absence of a bridge, farther down the trail, which Plaintiff never encountered before her incident on the bicycle ramp.  Nor was the bicycle ramp on the USFS-maintained trail.  Plaintiff acknowledged that she had chosen an "alternate route" in order to traverse the ramp, Dep. of Teresa Gonzalez [59-2] at 62-63, and Mr. Grice testified that the portion of the bicycle trail with the ramp was not created or maintained by the USFS, Dep. of Charles D. Grice, Sr. [59-7] at 122.

The USFS posted a notice on the bulletin board at the trailhead stating that the Couch Loop Trail was closed and employed other means of flagging and marking the washed-out bridge crossing.  Plaintiff claims that "[t]he Forestry Service personnel failed to follow standards for signs on the Forestry Service property," that the notice provided by the USFS was inadequate, and that "[t]he Government employees violated the specific Forestry Service Rules, Regulations and Standards for posting the Couch Loop Trail to properly warn the Plaintiff that the trail was closed."  Resp. [59] at 33-34.  Plaintiff refers to FSM 2300, paragraph

2353.23, and EM 7100-15, paragraphs 1.3, 1.7, 2.2.5, 5.1, 12, 13, and 13.2.  *Id.* at 24-26.

The Court is not persuaded that these provisions, or that the remainder of the Manual, Handbook, and EM Guidelines excerpts submitted by the parties, contain any mandatory requirements applicable to the facts here.  These authorities do not dictate precisely when or how employees should post notices to alert visitors of closed bicycle trails.  While they outline general policy goals regarding safety, the means by which NFS personnel meet these goals involves the exercise of discretion.  In sum, there was "room for choice" in making the allegedly negligent decision as to how to mark the closed Couch Loop Trial.

Mr. Grice employed such choice in this case.  Mr. Grice testified that no one instructed him where to place notices of trail closures and that he posted the notice on the bulletin board at the trailhead area, which is where he would normally post notices and warnings.  Dep. of Charles D. Grice, Sr. [59-7] at 113.  Mr. Grice explained that he

> put that sign up there because when you turn in the parking lot, you're looking directly at the bulletin board.  And if they know what loop they're going to ride, which is up there, they're going to see this with no problems.  And when you turn in the gate, boom, there it is.  That's why it's in big, bold letters like it is.

*Id.* at 79.  Based on the foregoing, the first element of the discretionary function exception is satisfied.  *See Davila*, 713 F.3d at 263.

USFS personnel's choice in how to mark the trail as closed is also the type of judgment that the discretionary function exception was designed to shield, as it is based on considerations of public policy.  *See Davila*, 713 F.3d at 263; *Berkovitz*, 486

U.S. at 537.  The Guidelines provide that the USFS should "[u]se trail signage to provide opportunities for experiencing nature while engaging in outdoor recreation in an improved, aesthetic aTMOphere [sic] that is consistent with policy (FSH 2309.18) and forest plan direction."  EM Guidelines [59-14] at 11.

The Fifth Circuit has held that regulations which instruct an agency to consider several factors, including aesthetics and recreation, present policy considerations which satisfy the second prong of the discretionary function exception test.  *See In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 452 (5th Cir. 2012).  In this case, USFS employees' decisions with respect to where or how to post notice of the trail closure are susceptible to policy analysis, implicating the discretionary function exception.  *See id.*; *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (La. Plaintiffs)*, 713 F.3d at 810.

Because the discretionary function exception applies, the Court lacks subject matter jurisdiction over Plaintiff's claim that USFS failed to properly warn or post adequate signage.

## III.  <u>CONCLUSION</u>

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  The discretionary function exception precludes Plaintiff's claims.  The Government's Motion to Dismiss [52] will be granted, and Plaintiff's claims will be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

-14-

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion to Dismiss or for Summary Judgment [52] filed by Defendant United States of America on September 8, 2015, is **GRANTED**, and Plaintiff's claims are **DISMISSED** for lack of subject matter jurisdiction.

**SO ORDERED AND ADJUDGED**, this the 28th day of December, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE